### BANSKI *v.* MICHALSKI.

1. FRAUD—CANCELLATION OF INSTRUMENTS—LAND CONTRACTS—EXCHANGE OF PROPERTY—PAST DUE PAYMENTS.

On a bill to set aside an assignment of a land contract on the ground of fraud, evidence that defendant or his agents represented to plaintiffs that there was nothing past due, while in fact there were several hundred dollars past due, *held*, sufficient to sustain a decree for plaintiffs.

2. SAME—RESCISSION—TENDER—EQUITY.

Where plaintiffs acted seasonably, on discovering the fraud, in repudiating the contract and tendering the property they had received and demanding a return of their own, it is of no importance that defendant has lost his equity in the property transferred to plaintiffs through action of the original owner in taking possession and reselling.

Appeal from Wayne; Perkins, J., presiding. Submitted October 23, 1918. (Docket No. 52.) Decided December 27, 1918. Rehearing denied May 1, 1919.

Bill by Teofil Banski and another against Anthony Michalski to set aside an assignment of a land con-

tract on the ground of fraud. From a decree for plaintiffs, defendant appeals. Affirmed.

*Arthur A. Koscinski,* for plaintiffs.

*Charles Bowles,* for defendant.

BROOKE, J. Plaintiffs, on June 17, 1917, were the owners of a house and two lots in the city of Detroit valued at about $5,200, upon which they had paid $1,850. The fact that they desired to become possessed of a farm became known to two real estate agents named Buczynski and Rybicki. Buczynski was associated as a stockholder with defendant Michalski in the Gaffke Realty & Building Company. It appears that Michalski had about a month prior to said date entered into an agreement with one Grochola for the purchase by exchange of a farm of 40 acres in St. Clair county which he desired to sell or exchange. On the said 17th of June, 1917, which was Sunday, the two real estate agents took plaintiffs to the farm in question for the purpose of exhibiting it to them. It is undisputed that on this trip which was made by automobile the agents took along a quart of whisky which was consumed by themselves and plaintiff Banski during the afternoon. A very superficial examination of the farm seems to have been made by plaintiffs that day. Returning to Detroit rather late Sunday evening the agents left plaintiffs at their home, then went for defendant Michalski, who up to that time had had no acquaintance with plaintiffs. It was represented to plaintiffs that the farm, together with some little personal property, was worth the sum of $4,500 and that there was then owing, but not due, on the land contract covering the same, the sum of $2,000. Plaintiff Teofil Banski and defendant discussed the question of exchange for several hours Sunday evening and ultimately reached an agreement for

an exchange by the terms of which defendant was to pay plaintiff the sum of $150 as difference. The sum of $50 was paid that night but was immediately turned over to the agents as their commission from plaintiffs. Three days later, on Wednesday, the 20th of June, plaintiff Teofil Banski taking the contract for his house and lots, duly assigned to defendant, accompanied Michalski, Grochola, and a notary public named Gaffke, who acted as interpreter, to the village of Richmond near the farm in question, where in the village bank, after some delay, plaintiff delivered to defendant the assignment of his house and lots and received an assignment of the contract covering the farm and a bill of sale of the personal property thereon. After the transaction was completed the parties drove to the farm where plaintiff made an arrangement with a man living on an adjoining farm to look after the personal property until he should come out to take possession thereof. All the parties to the transaction are Poles. Prior to entering into the contract of exchange plaintiffs seem to have had no advice and were apparently ignorant as to farm values. Within two days after the conclusion of the deal plaintiff went to the farm in question and making inquiries in the neighborhood claims to have discovered that the farm was worth only about one-half the sum at which it had been valued in the trade. He sought the advice of counsel and immediately or on July 13, 1917, made a formal tender to defendant of the sum of $290, represented by $250 cash paid by defendant to him and $40, the value of a horse which had in the meantime died, together with a reassignment of the contract for the farm and a bill of sale of the personal property thereon, and demanded from defendant a return of the contract covering his house and lots. This was refused by defendant, and the

next day, July 14, 1917, he filed his bill of complaint herein, praying that said assignment from plaintiffs to defendant be set aside upon the ground of fraud. Having repudiated the transaction, plaintiff paid no further attention to the farm in question and defendant insisting upon his rights under the exchange contract refused to take the farm back. Under these circumstances the owner of the legal title to the farm took the personal property thereon to satisfy "payments which were due for taxes and stuff," and on the 23d day of July, 1917, resold the farm to one Prokopik for $2,300. Defendant on cross-examination testified:

"*Q.* And you admit now there was six or nine hundred dollars that ought to have been paid when Banski got it?

"*A.* Six or nine hundred was supposed to pay before. My understanding was if I take the farm I pay that and went to see Mr. Karp and have a talk with him. * * *

"*Q.* Did you know how much was past due?

"*A.* Past due, as I said there was six to nine hundred.

"*Q.* And you told him there was not more than $100?

"*A.* I did not. Did I answer that question three times already?"

While the record is not very clear, the witnesses for the most part testifying through an interpreter, we think it fairly appears that the plaintiffs were led to believe that the balance upon the contract was not to exceed $2,000 and that there was nothing past due thereon. This misrepresentation of fact is quite independent of any alleged misrepresentation as to value and was certainly material. We are favored with no opinion from the learned trial judge who heard and saw the witnesses but from a careful perusal of the record we are satisfied that plaintiffs were

induced to consummate the transaction in question through fraudulent representations made by or on behalf of defendant.  Plaintiffs acted seasonably in repudiating the contract, tendering the property they had received and demanding a return of their own. The fact that defendant has lost the farm through the action of the original owner is of no importance.  Tender to him was made ten days prior to the resale of the farm by the owner and he could readily have protected himself had he so desired.

The decree is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.